UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NIKKI MAYES,

              Plaintiff,                    CASE NO. 05-70249

-vs-                               PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

DAIMLER CHRYSLER,
a foreign corporation and
JOHN DOE

              Defendants.

_____/


**OPINION AND ORDER (1) GRANTING DEFENDANT DAIMLERCHYRSLER'S MOTION FOR SUMMARY JUDGMENT, AND (2) DISMISSING PLAINTIFF'S CLAIMS AS TO DEFENDANT JOHN DOE**

       Presently before the Court is Defendant DaimlerChrysler's Motion for Summary Judgment.

**BACKGROUND:**

       On February 14, 1996, Plaintiff Nikki Mays[1] signed and submitted an Application for Employment with the Chrysler Corporation. (DaimlerChrysler's Mot., 2). The application form contained the following provisions:

> I agree that any claim or lawsuit relating to my service with Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary.

(*Id.*, Ex. A). Plaintiff was not hired at that time but reapplied for employment on March 9, 1998.

---

[1] Plaintiff's last name appears to have been misspelled "Mayes" in the original Complaint.

The second employment application contained the following provision:

> In consideration of Chrysler's review of my application, I agree that any claim or
> lawsuit arising out of my employment with, or my application for employment
> with, Chrysler Corporation, or any of its subsidiaries must be filed no more
> than six (6) months after the date of the employment action that is the subject
> of the claim or lawsuit.  While I understand that the statute of limitations for
> claims arising out of an employment action may be longer than six (6) months,
> I agree to be bound by the six (6) month period of limitations set forth herein,
> and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.
> Should a court determine in some future lawsuit that this provision allows an
> unreasonably short period of time to commence a lawsuit, the court shall
> enforce this provision as far as possible and shall declare the lawsuit barred
> unless it was brought within the minimum reasonable time within which the
> suit should have been commenced.

(*Id.*, Ex. B) (emphasis in original).  Plaintiff completed and signed both applications.  (*Id.*, 3).  In

May, 1998, Chrysler entered into a business combination agreement with Daimler Aktien-

gesellschaft, which was approved by their respective stockholders in September 1998.  As a part of

the merger, Chrysler became a subsidiary of the new corporation, DaimlerChrysler.  (*Id.*, Ex. N).


Plaintiff began working as an hourly, UAW-represented employee at the Jefferson North

Assembly Plant ("JNAP") on July 13, 1998.  (*Id.*, 3).  She remained in the same job at JNAP

throughout her employment.  She had no problems with co-workers or supervisors during her

employment and did not believe that anyone had sexually harassed her while physically located in

the workplace.  (*Id*).

In her employment records, Plaintiff listed her parent's address as her address of record.

(*Id.*).  She has resided in Detroit with her parents and, at other times, with her boyfriend.  (*Id.*).

Plaintiff took a number of medical leaves during her employment, including several leaves from

October 2000 to November 2001 related to foot surgery, back pain, and an injured hand.  (Mays

2

Dep., 151:22-152:23, Ex. D).  On November 28, 2001, she commenced another medical leave for back pain.  (DaimlerChrysler's Mot., Ex. E).  She was scheduled to return to work on December 6, 2001, with no restrictions.  (DaimlerChrysler's Mot., 4).

On December 6, 2001, Plaintiff received the first of several handwritten notes in the mail at her parents' address, which contained sexually explicit language threatening to rape her.  (*Id.*, Ex. D). Statements in the note suggest that it had been written by a co-worker.  Plaintiff reported receipt of this note to her union committeeperson, Clarence Cobb, on December 6, 2001.  (*Id.*).  At that time, Plaintiff identified two co-workers, Anthony Johnson and Gaston McCants, as possible authors of the note based on the fact that Mr. Johnson used to stare at her while she was working on the line, and that Mr. McCants had told her he was going to start calling her "Dimples" because he liked her dimples.  (*Id.*; Mays Dep., 110-11).  She did not recall at her deposition that she had identified Mr. McCants as a suspect.  (*Id.*; Mays Dep., 111, 115).

Following this meeting, Plaintiff stated that she was told by her union representative and later by an International UAW representative, Virdell King, to turn everything over to her union, rather than to DaimlerChrysler management.  (*Id.* at 5; Mays Dep., 126-28, 134-35, 149). Thereafter,  Plaintiff turned over all objectionable material that she received at her parents' home to her union representatives.  (*Id.*; Mays Dep., 126, 134, 145, 147-48).  Plaintiff received another piece of threatening mail which included a photocopy of her Chrysler ID badge, on December 31, 2001, which she turned over to her committeeperson (Mays Dep., 120).  In March 2002, Plaintiff received several birthday cards which contained clippings from pornographic magazines also at her parents' address.

On approximately March 21, 2002, Plaintiff's mother called DaimlerChrysler's Corporate

3

2:05-cv-70249-PDB-VMM   Doc # 12   Filed 10/12/05   Pg 4 of 16   Pg ID 474

Diversity office and requested that the investigation be re-opened.  (DaimlerChrysler's Mot., Ex. G).  Defendant assigned the case to Marvin Moore, from Defendant's Corporate Diversity office, and Michael Krotche, from Defendant's Special Security Services.  (*Id.*).  Plaintiff told Mr. Moore that the U.S. Postal Service was investigating her complaint, and Mr. Krotche assisted in getting the Postmaster a copy of the Plant's investigative file.  (*Id.*).  The Postal Inspector advised Mr. Moore that the U.S. Postal Service was not going to investigate the allegations.  (*Id.*).

On May 3, 2002, JNAP was requested to provide the union with their investigation file on Plaintiff's complaint.  On May 8, Plaintiff submitted medical documentation requesting a transfer to another plant due to Adjustment disorder, depression, and anxiety.  (*Id.*).  On approximately May 10, 2002, Plaintiff received a third harassing card on her birthday.  A few weeks later, Plaintiff saw a medical doctor at JNAP and expressed some frustration, but there is some dispute as to exactly what was said during the conversation.[2]  (Mays Dep., 138:18-141:24).  Following the doctor's visit, Plaintiff's code for leave was changed from "sick leave" to "suspension for threatening and intimidating behavior."  (DaimlerChrysler's Mot., Ex. G).  Plaintiff indicated that she sometimes has suicidal thoughts but has no desire to harm anyone at the plant where she works.  In late May, Defendant hired a handwriting analysis expert from Speckin Laboratories to analyze the material Plaintiff had received and compared it with handwriting samples from the two individuals Plaintiff had identified as possible suspects.  (*Id.*).  On June 24, 2002, Plaintiff's leave code changed to "no work available."

---

[2]A chronology submitted by Mr. Moore, the Corporate Diversity Officer, reports that a JNAP medical doctor remarked about Plaintiff "...she gets very angry having to come to the plant.  She stated that she felt as if she could take an AK47 and shoot up the place." (DaimlerChrysler's Mot., Ex. G).

On June 26, Plaintiff's mother agreed to send the original cards and letters to the handwriting expert.  On July 19, 2002 the Plant Labor Relations and Security arranged for both suspects to provide documentation that they had not been harassing Plaintiff.  Defendant sent the samples to Speckin Laboratories on July 29.  (*Id.*).

On August 2, 2002, the Forensic Document Analyst from Speckin Laboratories sent his report to Defendant. (DaimlerChrysler's Mot., Ex. I).  In his report, he states that (1) the documents sent to Plaintiff were likely written by one person; (2) the handwriting in the documents was quite dissimilar to that of Plaintiff and Gaston McCants, one person whom Plaintiff had named as a suspect; and (3) that Anthony Johnson, the other person whom Plaintiff had suspected of writing the letters, "could have written the questioned documents," and (4) that the same common machine with double sided capabilities was used to copy the documents.  (*Id.*).  The analyst goes on to state that "[i]f additional comparisons were needed with Mr. Johnson, it would be necessary to obtain current known printing."  (*Id.*).

On August 20, 2002, Plaintiff's mother spoke with Mr. Moore of DaimlerChrysler and indicated that Plaintiff had received another letter, and that she was going to the police department the next morning.  (*Id.*).  Mr. Moore advised her to give police his name and phone number, and that he would provide them with all the documents he had concerning his office's investigation.  (*Id.*).  On August 23, 2002, Plaintiff's mother contacted Mr. Moore again and advised that she was dissatisfied with the actions taken by the plant, and would seek a solution by notifying the local media and hiring an attorney.  (*Id.*).  In the chronology produced as Exhibit G, Mr. Moore states that the next steps that needed to be taken were to "close Plant and Diversity investigation then contact Mike Krotche Special Security Operations for follow up."  (*Id.*).  The exhibit indicates that the

document was updated August 23, 2002.  (*Id.*).

Plaintiff did not return to work while these events were taking place.  She indicated during her deposition, however, that she did return to work for two days in August 2002.  (Mays Dep., 71:5-72:21).  During those two days, she says that she was on medication and became sick, and that the "human resources man" Frank Batagli informed her that if she took her medication again, she was going to get suspended.  (*Id.*).  Plaintiff states that the next day when she took her medication and came to work, she passed out.  When she regained consciousness, she was in "medical" and "was sent to the hospital... on the psychiatric ward."  (Mays Dep., 71:24-72:15).  The date of this occurrence was the last day that Plaintiff worked.  No other incidents took place during those two days.  (*Id.*).

In August of 2002, Plaintiff signed a transfer request "under protest" to transfer her to the Warren Truck Plant.  (*See* DaimlerChrysler's Mot., Ex. J; Mays Dep., 89).  She stated during her deposition that she did not want to transfer and that "Jefferson North felt [she] should go over there."  (Mays Dep., 89-90).  Plaintiff has been totally and permanently disabled since August 2002, and in January 2005, she was awarded total and permanent disability benefits from the Social Security Administration, retroactive to August 2002.  (Mays Dep., 77-78).

## PROCEDURAL HISTORY

On November 16, 2004, Plaintiff filed this lawsuit in the Wayne County Circuit Court, and served Defendant DaimlerChrysler with a copy of the Summons and Complaint on January 4, 2005.  Plaintiff's Complaint lists eight counts; it does not contain counts numbered seven and eight but instead skips from Count VI to Count IX.   In the Complaint, Plaintiff brought claims against Defendant John Doe for a hostile work environment, intentional infliction of emotional distress,

interference with contract and prospective advantages, and assault and battery.   Against

DaimlerChrysler, Plaintiff alleged breach of right to make and enforce contracts, sexual harassment

under M.C.L. 37.2202, retaliatory discharge, and vicarious liability/respondeat superior.

DaimlerChrysler removed the lawsuit to this Court on January 24, 2005, on the basis of federal

question jurisdiction because Count IV of Plaintiff's Complaint alleged a claim under 42 U.S.C. §

1981.

Specifically, Count IV, styled "Breach of Right to make and Enforce Contracts," stated in

paragraph 23:

> Defendant DaimlerChrysler breached their statutory duty [] pursuant to 42 U.S.C.
> [§] 1981 to refrain from depriving plaintiff of the same right to make and enforce
> contracts as is enjoyed by Plaintiff who is African American by failing to take
> prompt remedial action against the discrimination and harassment, and by other-
> wise condoning that harassment and discrimination.

## ANALYSIS

### A.     Standard of Review

The Court reviews Plaintiff's Motion for Summary Judgment under Federal Rule of Civil

Procedure 56.  Pursuant to Rule 56, a party against whom a claim, counterclaim, or cross-claim is

asserted may "at any time, move with or without supporting affidavits, for a summary judgment in

the party's favor as to all or any part thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is

appropriate where the moving party demonstrates that there is no genuine issue of material fact as

to the existence of an essential element of the nonmoving party's case on which the nonmoving

party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility
> of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits,

if any," which it believes demonstrate the absence of a genuine issue
of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

8

**B.      Effect of Merger on Plaintiff's Employment Contract**

Pursuant to M.C.L. § 450.1724(d), when two corporations merge, "the surviving corporation generally succeeds to all the liabilities of the constituent corporations." *Jeffrey v. Rapid Am. Corp.*, 448 Mich. 178, 190 (1995); *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1245 (6th Cir. 1991) ("For purposes of liability, the surviving corporation and the merged corporation are one and the same."). Employment contracts of the predecessor corporation are included in the definition of liabilities.

DaimlerChrysler cites *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) in support of its argument that the merger had no effect on whether Plaintiff was bound by the employment application signed with Chrysler. In *Wiley*, the Union entered into a collective bargaining agreement with a publishing firm, which merged with the successor employer. The agreement did not contain an express provision making it binding on successors of the publishing firm. During the term of the agreement, the plaintiff merged with the publishing firm. The plaintiff claimed that it was not required to abide by an arbitration provision in the collective bargaining agreement because the agreement did not say that it would be binding on successor corporations. The Supreme Court held that "the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement." *Wiley*, 376 at 548. The Court stated that where there is "substantial continuity of identity in the business enterprise" and the union has articulated rights under the agreement, the duty to arbitrate survives the merger. *Id.* at 549-51.

DaimlerChrysler also cites *Thurman v. DaimlerChrysler*, 397 F.3d 352 (6th Cir. 2004), to persuade the Court that Plaintiff is bound by the six-month provision in her employment application.

9

In *Thurman*, Plaintiff Thurman signed an employment application in 1993, which contained a six-month limitation period on her ability to file a lawsuit. In June 2000, after the merger of Daimler Benz and Chrysler, Thurman filed a lawsuit against DaimlerChrysler alleging various claims for events that occurred in 1999. DaimlerChrysler's motion for summary judgment was granted based on the fact that Thurman's claims were time-barred by the six-month statute of limitations in the contract that she signed. Thurman argued that the limitations period was not applicable because she was hired thirteen months after she signed the application, and the application stated that it was only valid for twelve months. The court of appeals found that, given the fact that the employer hired the employee based upon the application she filled out, and that the application became part of her employment record, plaintiff's argument that the application expired prior to her hiring was without merit. *Id.* at 355-56. Concerning Chrysler's merge into DaimlerChrysler, the court only stated, "Prior to beginning her employment with DaimlerChrysler, Ms. Thurman completed an employment application for DaimlerChrysler (then Chrysler Corporation)," and [u]pon her hiring, Ms. Thurman was covered by the collective bargaining agreement between DaimlerChrysler and [the UAW]." *Id.* at 354.

Here, DaimlerChrysler is the corporation that emerged from the merger of Daimler Benz and Chrysler in 1998. As dictated by *Wiley*, there was a substantial similarity of operation and continuity of identity at JNAP where Plaintiff worked after Defendant became DaimlerChrysler. Following the merger, Plaintiff never disputed that her employment was with DaimlerChrysler, so she has received the benefits of employment post-merger. In addition, as the successor corporation to Chrysler, Defendant does not deny that it assumed Chrysler's employment contracts which included Plaintiff's employment application. Just as in *Thurman*, Ms. Mays, signed a contract with

a six-month provision with Chrysler then filed suit against DaimlerChrysler and is covered by the collective bargaining agreement between DaimlerChrysler and the UAW.  The "identity of the employer" did not change between the time Plaintiff signed her employment application and the time she began working for Chrysler.  Thus, the Court finds that Plaintiff is bound by the six-month statute of limitations contained in her Chrysler employment application.

## C.    Retaliatory Discharge Claim

Plaintiff alleges that DaimlerChrysler discharged her because she filed a complaint. DaimlerChrysler counters that Plaintiff has not been discharged at all, so her claim for retaliatory discharge must fail as a matter of law.  To state a claim of retaliatory discharge, a plaintiff must establish: (1) That he participated in a protected activity; (2) That the company was aware of his participation; (3) That the company subsequently took action adverse to plaintiff; and (4) That there is a causal connection between the protected activity and the adverse employment action.  *Melchi v. Burns International Security Services, Inc.*, 597 F. Supp. 575, 582 (E.D. Mich. 1984).

Here, Plaintiff has not met the most important requirement: that the employment actually be terminated.  Plaintiff makes clear in her deposition that she is still employed by DaimlerChrysler. In response to questioning from counsel for DaimlerChrysler, Plaintiff replies that she is still on "Code 52" medical leave, and she affirms that no one has ever told her that she is discharged from employment at DaimlerChrysler.  (Mays Dep. 74-76).

Plaintiff counters that she was constructively discharged from DaimlerChrysler. "Constructive discharge is not, itself, a cause of action, but rather a defense to the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily."  *Vagts v Perry Drug Stores, Inc.*, 204 Mich App 481, 487 (1994).  In order to properly raise the defense of constructive

11

discharge, a plaintiff must show that "an employer deliberately [made] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Manning v. Hazel Park*, 202 Mich. App. 685, 697 (1993).  Thus, the actual resignation of the employee is required.  Plaintiff admits that she has neither been discharged nor has she involuntarily resigned.  Indeed, at oral argument, counsel for Plaintiff acknowledged that she had not been discharged.  Therefore, DaimlerChrysler is granted summary judgment on her claim of retaliatory discharge.

**D.     Reasonableness of Six-Month Statute of Limitations**

Plaintiff argues that, even if she is bound by the employment application, the six-month statute of limitations provision in the agreement is unreasonable. As DaimlerChrysler points out, the Michigan Supreme Court's opinion in *Rory v. Continental Insurance Company, 473 Mich. 457* (2005) abandoned the previously used" reasonableness" test, overruling several of its past holdings, including many cited in both Plaintiff's and DaimlerChrysler's briefs.  Rather, the court held that "unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id.* at 461.   The court further remarked that "the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Id.*  This decision overruled any previous decisions that allowed the court to "abrogate unambiguous contractual terms on the basis of reasonableness determinations."   While *Rory* concerns an insurance contract, the Michigan Court of Appeals just recently held that it also applies in employment contract cases involving this same defendant. *See Clark v. DaimlerChrysler Corp.*,

12

No. 252765, 2005 WL 2217106, *2-*3 (Mich. Ct. App. Sept. 13, 2005) (stating that under *Rory*, Plaintiff's civil rights claim was time-barred by the six-month statute of limitations provision in his employment application); *see also Reed v. Yackell*, 473 Mich. 520, 553 (Mich. 2005) (citing *Rory* for the proposition that "the judiciary is powerless to modify unambiguous statutory language in order to inject its own policy preferences" to resolve whether court or agency had jurisdiction to determine whether plaintiff was an employee under Michigan's Worker's Disability Compensation Act).

Plaintiff's argument, that it is a question of fact whether the six-month limitations period is valid, is unfounded based upon the decision in *Rory* and the above case law. The six-month limitation is unambiguous in the employment application that Plaintiff signed, and Plaintiff has alleged none of the usual contract defenses to support why the six-month limitation as applied to her should be deemed unreasonable. Even construing the facts in a light most favorable to Plaintiff, her assertion that she is "confident" that the reason for any delay was due in no small part to her [mental health] problems," and that she could receive another threatening letter at any moment is deficient as a matter of law. As DaimlerChrysler points out, if Plaintiff's arguments were accepted, the six-month limitation would be meaningless. The relevant date for purposes of determining the statute of limitations is the date that the last "employment action" occurred for which Plaintiff is filing a lawsuit. (*See* DaimlerChrysler's Mot., Ex. B). The last date on which Plaintiff received a threatening note was in August 2002. Even if this Court were to find that the last employment action occurred when Plaintiff's mother called to complain about the progress of DaimlerChrysler's investigation, nearly two years had passed before Plaintiff filed her Complaint. Plaintiff has failed to explain how her circumstances may have changed in 2004 that enabled her to file her complaint

then but not at any prior time. Based on the above discussion, the Court finds that the six-month limitation is reasonable under *Rory*, and grants DaimlerChrysler's Motion for Summary Judgment on the remainder of Plaintiff's claims against it.

**E.    Count IV Federal Claim Alleging Violation Under 42 U.S.C. § 1981**

Count IV of Plaintiff's Complaint, which alleges a violation of 42 U.S.C. § 1981, is dismissed because Plaintiff's deposition testimony clearly denies any claim of racial discrimination.

The facts of this instant Complaint relate to sexual harassment letters sent to Plaintiff's mail address (her parents' house where she lived on and off).  Count IV appears to allege that her employer Defendant DaimlerChrysler did not adequately investigate her complaint due to her race.

At her deposition, in response to a question as to whether Plaintiff had any basis to believe that Defendant's investigator treated her differently because of her race, Plaintiff denied that claim:

> Q:    Do you have any facts to suggest that you were treated any differently with respect to the way DaimlerChrysler handled your complaint because of your race?
>
> A:    I don't want to say race, I want to say because of the position I was in.
>
> Q:    What do you mean?
>
> A:    Being an assembler, better than being in the office.
>
> Q:    So you're saying that your race didn't have anything to do with how DaimlerChrysler reacted to your complaints but you feel if you had been an office worker as opposed to an assembler, they would have done more than they did?
>
> A:    Yes.

(Pl.'s Dep. 159:15-160:2).

Accordingly, for this particular reasoning, apart from the statute of limitations issue, the Court grants

14

Defendant summary judgment as to Count IV insofar as it alleges a federal claim.

**F.      Disposition of Plaintiff's Remaining Claims Against Defendant John Doe**

Defendant John Doe has neither been identified nor served with the Complaint.  Federal Rule of Civil Procedure 4(m) states, in pertinent part:

> **Time Limit for Service**. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Because more than 120 days have passed since Plaintiff's complaint was filed and removed to this Court, and John Doe is still unknown, the Court shall dismiss without prejudice Plaintiff's claims against Defendant John Doe.  *See, e.g., Runyon v. Glynn*, No. 1:00-CV-819, 2002 U.S. Dist. LEXIS 18554, at *3 n.1 (W.D. Mich. May 6, 2002) (unpublished opinion), *aff'd*, 64 Fed.Appx. 924 (6th Cir. 2003) (dismissing plaintiff's claims against a John Doe under Rule 4(m) where "[p]laintiff made no further effort to identify John Doe #3 or to effect service upon him.").

**CONCLUSION**

For the reasons stated herein, the Court GRANTS Defendant DaimlerChrysler's Motion for Summary Judgment on all of Plaintiff's claims against DaimlerChrysler. The Court DISMISSES Plaintiff's remaining claims against John Doe.

**SO ORDERED.**

**s/Paul D. Borman**
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

**Dated:  October 12, 2005**

**CERTIFICATE OF SERVICE**

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 12, 2005.**

**s/Jonie Parker**
**Case Manager**

16